IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREGORY HAMMOND,<br>                  Plaintiff,<br><br>    vs.<br><br>SCI ALBION/DOC; P.A. DANIEL<br>TELEGA; NURSE MARC GRUCZO;<br>MAXINE OVERTON, MEDICAL<br>ADMINISTRATOR; MALINDA<br>ADAMS, SUPERINTENDENT'S<br>ASSISTANCE/GRIEVANCE<br>COORDINATOR,<br>                  Defendants. | )<br>)<br>)<br>) Civil Action No. 12-15E<br>) Magistrate Judge Maureen P. Kelly<br>)<br>)<br>)<br>) ECF No. 26<br>)<br>)<br>)<br>) |

**MEMORANDUM ORDER**

Plaintiff, Gregory Hammond, is an inmate in the custody of the Pennsylvania Department of Corrections ("DOC"), and is currently incarcerated at the State Correctional Institution ("SCI") at Albion. Plaintiff has brought this civil rights suit against SCI Albion/DOC, Nurse Marc Gruczo, Nurse Bobbie Monroe, Maxine Overton, Medical Administrator, Malinda Adams, Superintendent's Assistant/Grievance Coordinator ("the DOC Defendants"), and P.A. Daniel Telega ("Telega"), alleging that Defendants violated his rights under the Eighth Amendment to the United States Constitution by failing to provide him with adequate medical care after he slipped in the shower on November 21, 2011, and severely injured himself. ECF No. 6.

On September 14, 2012, Plaintiff filed a Motion for Injunction ("the Motion") in which he asks the Court to: 1) compel the Medical Department at SCI Albion to arrange for him to have a complete exam by a neurologist or an orthopedist; 2) require the Medical Department to turn over his medical records in their entirety; and 3) prevent the Medical Department from taking his wheelchair away from him. ECF No. 26. Defendant Telega and the DOC Defendants filed responses to Plaintiff's Motion on October 17, 2012 and October 26, 2012, respectively. ECF

Nos. 27, 28.  Accordingly, the Motion is now ripe for review.  For the reasons that follow, the Motion will be denied.

## I. LEGAL STANDARD

A preliminary injunction is an extraordinary and drastic remedy that "should not be lightly indulged in, but used sparingly and only in a clear and plain case."  Emile v. SCI-Pittsburgh, 2006 WL 2773261, at *6 (W.D. Pa. Sept. 24, 2006), *quoting* Plain Dealer Publ'g Co. v. Cleveland Typographical Union #53, 520 F.2d 1220, 1230 (6th Cir. 1975).  See AT&T v. Winback and Conserve Prog. Inc., 42 F.3d 1421, 1426-27 (3d Cir. 1994).  "[G]reat caution" and "judicial restraint" are particularly called for in the prison context where "complex and intractable problems of prison administration" are implicated.  Goff v. Harper, 60 F.3d 518, 520 (8th Cir. 1995).  See Bailey v. Gagnon, 2009 WL 982694, at *1 (W.D. Pa. April 9, 2009).

In determining whether a preliminary injunction is warranted, the District Court is to consider "(1) whether the movant has a reasonable probability of success on the merits; (2) whether irreparable harm would result if the relief sought is not granted; (3) whether the relief would result in greater harm to the non-moving party, and (4) whether the relief is in the public interest."  Monroe v. Bryan, 2012 WL 2478375, at *1 (3d Cir. June 29, 2012), *quoting* Swartzwelder v. McNeilly, 297 F.3d 228, 234 (3d Cir. 2002).  See Abu-Jamal v. Price, 154 F.3d 128, 133 (3d Cir. 1998) (for an inmate to sustain his burden of proof that he is entitled to a preliminary injunction, he must demonstrate both a reasonable likelihood of success on the merits and that he will be irreparably harmed if the requested relief in not granted).  "[I]t is the movant's burden to show that the 'preliminary injunction must be the only way of protecting the plaintiff from harm.'"  Emile v. SCI-Pittsburgh, 2006 WL 2773261, at *6, *quoting* Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 91 (3d Cir. 1992).  Indeed, because "[t]he purpose of a

preliminary injunction is to preserve the *status quo*, not to decide the issues on their merits[,] Anderson v. Davila, 125 F.3d 148, 156 (3d Cir. 1997), irreparable harm is established by showing that the plaintiff will suffer injury that "cannot be redressed by a legal or an equitable remedy following trial." Messner v. Bunner, 2009 WL 1406986, at *4 (W.D. Pa. May 19, 2009), *quoting* Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989). See Acierno v. New Castle Cnty., 40 F.3d 645, 653 (3d Cir. 1994) ("[t]he word irreparable connotes 'that which cannot be repaired, retrieved, put down again, atoned for . . .'") (citations omitted).

## II. DISCUSSION

### A. Likelihood of Success on the Merits

The Prison Litigation Reform Act ("PLRA") requires a prisoner filing a Section 1983 action to exhaust all administrative remedies before filing a claim in federal court. 42 U.S.C. § 1997e(a). See Spruill v. Gillis, 372 F.3d 218, 228 (3d Cir. 2004). In order to properly exhaust his or her administrative remedies, a plaintiff must be in "compliance with an agency's deadlines and other critical procedural rules . . . ." Woodford v. Ngo, 548 U.S. 81, 90–91 (2006). In this case, the DOC's Grievance System Policy, DC–ADM 804, which sets out a three-step grievance and appeals process, applies. Spruill v. Gillis, 372 F.3d at 233.

The DOC Defendants and Defendant Telega filed Motions to Dismiss on May 16, 2012 and May 21, 2012, respectively, arguing, amongst other things, that Plaintiff's claims are properly dismissed because Plaintiff has failed to exhaust his administrative remedies as is required under the PLRA. ECF Nos. 14, 18. Although Plaintiff has responded to Defendants' Motions, both of which are still pending, he has not addressed the exhaustion issue. To the extent that Plaintiff's silence can be interpreted as conceding the issue, it does not appear that he is likely to succeed on the merits of his claims.

3

Nevertheless, in order to establish an Eighth Amendment violation, Plaintiff must demonstrate: (1) that he has a serious medical need; and (2) that Defendants were deliberately indifferent to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). See Spruill v. Gillis, 372 F.3d at 235. Establishing deliberate indifference requires Plaintiff to "make an 'objective' showing that the deprivation was 'sufficiently serious,' or that the result of defendant's denial was sufficiently serious. Additionally, a plaintiff must make a 'subjective' showing that defendant acted with a 'sufficiently culpable state of mind.'" Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002), *citing* Wilson v. Seiter, 501 U.S. 294, 298 (1991).

Deliberate indifference will be found "where [a] prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse v. Plantier, 182 F.3d at 197. Inconsistencies or differences in medical diagnoses, short delays unaccompanied by arbitrary or unduly burdensome bureaucratic procedures, and the refusal to summon the medical specialist of the inmate's choice, perform tests or procedures that the inmate desires, or to explain to the inmate the reason for medical action or inaction, however, does not amount to cruel and unusual punishment. Maqbool v. Univ. Hosp. of Med. & Dentistry of New Jersey, 2012 WL 2374689 at * 9 (D.N.J. June 13, 2012). Nor do allegations of negligence or medical malpractice. See Spruill v. Gillis, 372 F.3d at 235 (neither claims of medical malpractice nor disagreements regarding the proper medical treatment are actionable); Rouse v. Plantier, 182 F.3d at 197, quoting Estelle v. Gamble, 429 U.S. at 105 (allegations of negligence and medical malpractice are not sufficient to establish a Constitutional violation as the "inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' . . ."). As such,

4

allegations that the inmate was provided with medical care, but the care was "inadequate" fails to state a cognizable claim. See Taylor v. Visinsky, 422 F. App'x 76, 78 (3d Cir. 2011).

Here, it is evident from Plaintiff's Complaint, as well as the instant Motion, that he has been receiving medical care for the injuries he sustained after he slipped in the shower on November 21, 2011. According to the Complaint, Plaintiff attempted to reach someone in the Medical Department on the morning of November 22, 2011 -- the day after he fell -- but was unable to do so because the entire facility had been placed on lockdown for an exercise drill. ECF No. 6, p. 3. Nevertheless, at 1:00 p.m. contact was made with Defendant Nurse Bobbie Monroe who informed Plaintiff that the Medical Department would not pick him up and requested that he walk to the Medical Department for his "mandatory morning meds." Id. Plaintiff contends, however, that he was unable to get up from his bed and that it was not until 2:30 p.m. that he was given access to a wheelchair which he used to get to the "medline" and, from there, to the Medical Department. ECF No. 6, pp. 3-4. Plaintiff alleges that the Medical Department refused to give him "emergency treatment," and was told to sign up for "sick line." Id. at p. 4. Although it is unclear from the Complaint whether or not Plaintiff signed up for "sick line," arrangements for a wheelchair were again made on November 23, 2011, so that Plaintiff could get to the "medline." Id. at pp. 4-5. This time, Plaintiff was subsequently wheeled into a treatment room where he was seen by Defendants Gruczo and Telega who diagnosed Plaintiff with a groin pull and gave him crutches to help him ambulate. Id. at pp. 5, 9. When Plaintiff complained to Telega that it hurt to stand even on the crutches, Telega allegedly responded, "[t]rust me, this is the best thing for this type of injury." Id.

Plaintiff also alleges that he had to walk to lunch with the crutches on November 24, 2011, at which time he collapsed on the ground in agony. Plaintiff was nevertheless retrieved by

an ambulance and taken to the Medical Department. Id. at pp. 6-7. It appears that from then on Plaintiff had a wheelchair available to him until he was seen by Dr. Maxan on December 6, 2011. Id. at pp. 7-9. At that time, Dr. Maxan diagnosed Plaintiff with a torn ligament, ordered that he keep the wheelchair pending future reevaluations, and that he be given heat packs two times a day. Id. at p. 9. According to Plaintiff, he was seen by Dr. Maxan again on December 13, 2011, December 19, 2011, January 9, 2012, and January 31, 2012. Id. at p. 11; ECF No. 26, p. 1. Dr. Maxan not only ordered that Plaintiff maintain the use of a wheelchair but he also prescribed muscle relaxers and physical therapy. Indeed, Plaintiff acknowledges that he was seen by various physical therapists on February 1, 2012, April 19, 2012, July 13, 2012 and September 7, 2012, all of whom told him to "stretch out the leg to regain range of motion." ECF No. 26, pp. 1-2.

These complaints appear to fall short of establishing deliberate indifference but rather echo Plaintiff's dissatisfaction and/or disagreement with the care he has been receiving, which fail to state a claim for an Eighth Amendment violation. Moreover, Plaintiff's allegation that Defendant Telega failed to perceive the seriousness of his injury sounds in negligence and is not actionable under the Eighth Amendment either. Under these circumstances, there appears to be little likelihood that Plaintiff will succeed on the merits of his claims.

      **B.     Irreparable Harm**

It does not appear that Plaintiff will suffer irreparable harm if preliminary relief is not granted by the Court. As previously discussed, irreparable harm is established by showing that Plaintiff will suffer harm that cannot be redressed by a legal or equitable remedy following trial. Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d at 801; Messner v. Bunner, 2009 WL 1406986, at *4. Plaintiff's instant requests that the Court issue an order compelling the Medical

6

Department at SCI Albion to refer him to a specialist and to block any attempt to seize the wheelchair that he has been issued, necessarily implicate the type and level of care Plaintiff has been receiving. As such, Plaintiff's request for preliminary relief not only extends beyond merely preserving the status quo, but speaks directly to the ultimate issues in the case. Those issues will be decided either on Defendants' Motions to Dismiss or at trial where, if successful, Plaintiff's request for relief will be redressed at that time. Plaintiff, therefore, is unable to show that he will be irreparably harmed if preliminary relief is not granted. See Messner v. Bunner, 2009 WL 1406986, at *5 (finding that the plaintiff "cannot demonstrate that he will suffer irreparable harm if he is not granted a preliminary injunction, because the ultimate issue presented will be decided either by this Court, upon consideration of Defendants' motion to dismiss, or at trial").

Further, with respect to Plaintiff's request for his medical records, Plaintiff has asserted that he has already obtained his medical records through the Institutional Law Project which intervened on his behalf. It is difficult for the Court to see how Plaintiff will be irreparably harmed if he is denied immediate access to records he apparently already has.

Moreover, to the extent that Plaintiff complains that the medical records he has received are incomplete and missing information, those issues relate directly to the merits of his claims and can also be redressed during discovery and at trial. In addition, Defendants have represented, and Plaintiff does not dispute, that there are set policies and procedures through which Plaintiff may gain access to his medical records notwithstanding his ability to access his records during discovery. ECF No. 27, p. 2; ECF No. 28, p. 3. Plaintiff therefore has failed to establish that he will be irreparably harmed if he is not provided with immediate access to his medical records.

### C. Harm to the Non-Moving Party and the Public Interest

The third and fourth factors the Court is to consider in determining whether injunctive relief is warranted do not weigh in Plaintiff's favor either as granting injunctive relief would not only result in greater harm to Defendants but would not be in the public's interest. As the District Court for the Middle District of Pennsylvania recently observed in assessing a similar motion for preliminary relief:

> granting this injunctive relief, which would effectively have the federal courts making *ad hoc*, and individual decisions concerning the treatment of a single prisoner, could harm both the defendants' and the public's interest. In this prison context, the defendants' interests and the public's interest in penological order could be adversely affected if the Court began dictating the housing or medical treatment for the plaintiff, one inmate out of thousands treated in the state prison system.

Ball v. Famiglio, C.A. No. 08-700, 2011 U.S. Dist. LEXIS 155253, at *26-27 (M.D. Pa. Oct. 7, 2011). See ECF No. 27-1, pp. 9-10. Here, like in Ball, Plaintiff asks the Court to make an *ad hoc* decision concerning his individualized medical treatment. Such a ruling would interfere with the administration and operation of SCI Albion as well as the course of Plaintiff's medical treatment, which is the very issue being litigated in this case. Thus, granting Plaintiff the relief he requests would not only result in harm to Defendants but is clearly not in the public's interest.

### III. CONCLUSION

Because none of the factors relative to granting preliminary relief weigh in Plaintiff's favor and it is otherwise clear that granting the requested relief at this juncture would be premature, the following Order is entered:

AND NOW this 7th day of November, 2012, IT IS HEREBY ORDERED that Plaintiff's Motion for Injunction, ECF No. 26, is DENIED.

By the Court,

/s/ Maureen P. Kelly
MAUREEN P. KELLY
United States Magistrate Judge

cc: Gregory Hammond
JL-5438
SCI Albion
10745 Rt 18
Albion, PA 16475

All Counsel of Record Via CM-ECF