IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREGORY HAMMOND, | ) |
| Plaintiff, | ) Civil Action No. 12-15E |
| | ) |
| vs. | ) Magistrate Judge Maureen P. Kelly |
| | ) |
| SCI ALBION/DOC; DANIEL TELEGA, | ) |
| Physicians Assistant at SCI Albion; | ) |
| MARC GRUCZA, Nurse at SCI Albion; | ) |
| BARBARA MONROE, Nurse at SCI | ) |
| Albion; MAXINE OVERTON, Medical | ) |
| Administrator at SCI Albion; MALINDA | ) Re: ECF Nos. 33, 35 |
| ADAMS, Superintendent's | ) |
| Assistance/Grievance Coordinator; PRISON | ) |
| HEALTHCARE SERVICES, et al., Medical | ) |
| Vendor for SCI Albion, | ) |
| Defendants. | ) |

## OPINION

**KELLY, Magistrate Judge**

Plaintiff, Gregory Hammond ("Plaintiff"), is an inmate in the custody of the Pennsylvania Department of Corrections ("DOC"), and is currently incarcerated at the State Correctional Institution at Albion ("SCI Albion"). Plaintiff has brought this civil rights action against Defendants SCI Albion/DOC; Daniel Telega, Physician's Assistant at SCI Albion ("Telega"); Marc Grucza, Nurse at SCI Albion ("Grucza"); Barbara Monroe, Nurse at SCI Albion ("Monroe"); Maxine Overton, Medical Administrator at SCI Albion ("Overton"); Malinda Adams, Superintendent's Assistant/Grievance Coordinator ("Adams"); and Prison Health Services, Inc., Medical Vendor for SCI Albion ("PHS"), alleging that Defendants violated his rights under the Eighth Amendment to the United States Constitution by failing to provide him with adequate medical care after he slipped in the shower on November 21, 2011, and severely injured himself.

Presently before the Court is a Motion to Dismiss Plaintiff's Consolidated Amended Complaint, or in the Alternative Motion for Summary Judgment, submitted on behalf of Defendants Telega and PHS ("the Medical Defendants"), ECF No. 33, and a Motion to Dismiss the Consolidated Amended Complaint submitted on behalf of Defendants SCI Albion/DOC, Grucza, Monroe, Overton, and Adams ("the DOC Defendants").  ECF No. 35. For the reasons that follow, both Motions will be granted.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

According to the Consolidated Amended Complaint, Plaintiff fell while he was in the housing unit shower at SCI Albion on November 21, 2011, and tore a ligament between his scrotum and inner thigh.  ECF 32, p. 2.  Plaintiff did not report the injury until the next day, on November 22, 2011, when he informed Corrections Officer Moore that he was in pain and could not get out of bed.  Id. at p. 3.  Officer Moore allegedly called the medical department ("medical") on Plaintiff's behalf and was informed that medical was not going to pick up Plaintiff and that he was to walk to medical for his morning medications.  Id.  Plaintiff contends that the medical staff threatened him with a misconduct if he did not walk to medical and a $25.00 charge if they had to come out in the rain to get him.  Id.  Although Plaintiff alleges that he agreed to pay the $25.00 fee, medical still did not come and get him.

Later in the day on November 22, 2011, after the shift change, Sergeant Bowman allegedly called medical on Plaintiff's behalf as well and was informed that medical was "aware of inmate Hammond and were not coming to get him."  Id.  Sergeant Bowman consequently borrowed a wheelchair for Plaintiff and another inmate took Plaintiff to medical.  Plaintiff complains that when he got to medical he was told to sign up for sick call and was refused critical care.  Id.

On November 23, 2011, two other officers allegedly called medical on Plaintiff's behalf and were also told that medical was not coming to get Plaintiff. Id. The officers borrowed another wheelchair so that Plaintiff could get to medical for treatment. Id. When Plaintiff was pushed into the infirmary, he claims he overheard Defendant Grucza say "It's that Hammond," and then, while being wheeled into the treatment room to see Defendant Telega, Grucza supposedly told another inmate "Hammond ain't getting no damn wheelchair, he's getting crutches." Id. Plaintiff claims that there were already crutches in the treatment room when he went in and that Defendants Telega and Grucza had an "insidious plan" to cause him further pain and suffering. Id. at pp. 3-4. When Plaintiff complained that he was in pain and could not stand erect on crutches, Telega, who allegedly misdiagnosed Plaintiff with a right hip injury without examining him or ordering x-rays, apparently told Plaintiff that he should trust Telega because crutches are "best for this type of injury." Id. at p. 4.

Plaintiff alleges that when he went to medical again the next morning, on November 24, 2011, also in a borrowed wheel chair, he encountered a "hostile" Defendant Monroe. Id. at p. 5. Plaintiff claims that Monroe began to yell that Plaintiff had already been seen the day before by Defendant Telega and that she was not about to change Telega's orders. Id. According to Plaintiff, Monroe then walked away and left plaintiff sitting in the waiting area. Id.

Plaintiff claims that later that day, while attempting to use the crutches, he fell on a concrete sidewalk. Id. Defendant Monroe arrived with the ambulance and, upon seeing Plaintiff, refused to help pick him up and told the officers to let Plaintiff get up on his own because there was nothing wrong with him. Id. The officers nevertheless assisted Plaintiff into the ambulance and Monroe accompanied him to medical, allegedly berating him on the way, saying that she could not do anything else for him. Id. at p. 5. Plaintiff also alleges that when

they arrived at medical Monroe grabbed Plaintiff's feet and swung them over the side of the "cart," causing him extreme pain. Id. at pp. 5-6. Plaintiff complains that Monroe was content to assume that nothing was wrong with him and deferred to the "erroneous" examination by Telega without assessing the degree of his injury or alerting the doctor. Id. at p. 6. Plaintiff alleges that Defendant Monroe subsequently left him sitting in the infirmary area and that after the shift change he was sent back to the unit in the wheelchair, which Plaintiff retained custody of since no one had instructed him to return it. Id.

The next day, however, on November 25, 2011, Plaintiff claims that Defendant Grucza yelled at him while he was at the "medline window," wanting to know how Plaintiff got a wheelchair and telling Plaintiff to return it immediately. Id. Grucza also allegedly called Plaintiff's unit requesting that the wheelchair be returned. Id.

It appears that Plaintiff was ultimately examined by Dr. Maxa on December 7, 2011, who diagnosed a severe strain and tear to his ligament in the scrotum area between the legs. Id. at p. 2. Dr. Maxa prescribed a wheelchair, heating pads and physical therapy. Id.

Plaintiff initiated this action on January 13, 2012, by submitting a Complaint to the Clerk of Court. See ECF No. 1. The Complaint was filed on February 8, 2012, ECF No. 6, and on May 31, 2012, Plaintiff submitted a Supplemental Complaint. ECF No. 22. The case was subsequently reassigned to the undersigned and on November 30, 2012, noting that Plaintiff's Supplemental Complaint, in which he sought only to add PHS as a Defendant, was not a free standing document, an Order was entered directing Plaintiff to file a Consolidated Amended Complaint raising all of the claims he wished to pursue and naming all the defendants against whom he wished to proceed in a single document. ECF No. 30. It was also ordered that the Consolidated Amended Complaint be filed on or before December 21, 2012, and be limited to

those claims already before the Court revolving around the medical care Plaintiff received for the injuries he sustained after he fell in the shower on November 21, 2011. Plaintiff was advised that any new or additional claims raised in the Amended Complaint would be stricken. Id.

Plaintiff filed a Consolidated Amended Complaint on January 10, 2013. ECF No. 32. The Medical Defendants filed a Motion to Dismiss Plaintiff's Consolidated Amended Complaint, or in the Alternative Motion for Summary Judgment, on January 17, 2013, and the DOC Defendants filed a Motion to Dismiss the Consolidated Amended Complaint on January 18, 2013. ECF Nos. 33, 35. Plaintiff filed a Response to Motion to Dismiss in which he addresses both the Medical Defendants' Motion and that filed by the DOC Defendants. ECF No. 44. As such, both Motions are ripe for review.

## II.     STANDARD OF REVIEW

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See California Public Employees' Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id., citing Papasan v. Allain, 478 U.S. 265, 286 (1986). Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Federal Rule of Civil Procedure 12(b)(6) where it does not allege

"enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

In deciding a motion to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). The United States Court of Appeals for the Third Circuit, however, has recognized an exception to the general rule finding that "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations omitted). See Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). Thus, court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d at 1196. Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted). See Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006), *quoting* 5B Charles A. Wright &

Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004) (a court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case'").

### III. DISCUSSION

Plaintiff has brought his claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws. It does not, by its own terms, create substantive rights." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006), citing Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979) (footnote omitted). Thus, in order to state a claim for relief under Section 1983, the plaintiff must allege facts from which it could be inferred that "the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." Id. at 423.

Plaintiff in this case claims that Defendants deprived him of his rights provided by the Eighth Amendment to the Constitution by failing to provide him with adequate medical care. The Court does not reach the merits of Plaintiff's claims because as it is clear from the record before the Court that Defendant SCI Albion/DOC is entitled to sovereign immunity and Plaintiff has failed to exhaust his administrative remedies with respect to the remainder of his claims.

7

### A. Sovereign Immunity

The DOC Defendants initially argue that Plaintiff's Section 1983 claims against Defendant SCI Albion/DOC should be dismissed because they are entitled to immunity under the Eleventh Amendment to the United States Constitution.

The Eleventh Amendment provides that:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.[1]

Thus, absent consent by a state, the Eleventh Amendment bars a civil rights suit in federal court against a state, or a department or agency of the state having no existence apart from the state as a defendant. Edelman v. Jordan, 415 U.S. 651, 663 (1974); Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981), *citing* Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274, 280 (1977). Pennsylvania has specifically withheld consent to suit in federal courts. 42 Pa. Cons. Stat. Ann § 8521(b) ("Federal courts. Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States"). Moreover, it cannot be disputed that the DOC, and by extension SCI Albion, is an administrative department of the Commonwealth of Pennsylvania. See 71 Pa. Stat. § 61 (naming the DOC as an administrative department of the Commonwealth). As such, SCI Albion/DOC are entitled to Eleventh Amendment immunity and are properly dismissed from this action.[2]

---

[1] The United States Supreme Court has long interpreted the Eleventh Amendment as prohibiting suits in federal court against a state by the defendant state's own citizens as well. See Hans v. Louisiana, 134 U.S. 1 (1890).

[2] Moreover, the United States Supreme Court held that a state is not "a person" subject to Section 1983 liability and that the non-person status extends to "governmental entities that are considered arms of the state for Eleventh Amendment purposes." Will v. Michigan Dep't of State Police, 491 U.S. 58, 70-71 (1989). Because the DOC and SCI Albion are arms of the state, dismissal of Plaintiff's federal claims brought against them are properly dismissed under Will as well.

B.     **The Exhaustion of Administrative Remedies Requirement**

The Prison Litigation Reform Act ("PLRA"), requires a prisoner filing a Section 1983 action to exhaust all administrative remedies before filing a claim in federal court.  42 U.S.C. § 1997(e)(a).[3]  See Spruill v. Gillis, 372 F.3d 218, 228 (3d Cir. 2004).  See also Nyhuis v. Reno, 204 F.3d 65, 73, (3d Cir. 2000) ("it is beyond the power of the court to excuse compliance with the exhaustion requirement").  In order to properly exhaust his or her administrative remedies, a plaintiff must be in "compliance with an agency's deadlines and other critical procedural rules . . . ."  Woodford v. Ngo, 548 U.S. 81, 90–91 (2006).  The DOC's Grievance System Policy, DC–ADM 804, sets out a three-step grievance and appeals process.  First, an inmate is required to legibly set forth all facts and identify all persons relevant to his claim in a grievance which will then be subject to "initial review."  Spruill v. Gillis, 372 F.3d at 232, 233.  Second, after the initial review by a grievance officer, the inmate has the opportunity to appeal to the Facility Administrator for a second level of review.  Id. at p. 232.  Finally, an appeal to the Secretary's Office of Inmate Grievances and Appeals is available.  Id.

In addition, the United States Court of Appeals for the Third Circuit has found that the PLRA's exhaustion requirement includes a procedural default component which requires more than "simple" exhaustion; it requires "proper" exhaustion.  Id. at 228, 230.  Thus, where the inmate fails to specifically name the individual in the grievance or where the grievance is untimely or otherwise defective, claims against an accused individual are procedurally defaulted.  Id. at 234.  See Woodford v. Ngo, 548 U.S. at 90-91 (exhaustion of administrative remedies

---

[3] Specifically, the PLRA states that:

> No action shall be brought with respect to prison conditions under section 1983 of this Title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

under the PLRA requires "using all steps that the agency holds out," and "demands compliance with an agency's deadlines and other critical procedural rules") (internal quotations and citations omitted).

Failure to exhaust administrative remedies, however, is an affirmative defense that is to be pleaded by the defendant. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2001). Thus, as with other affirmative defenses, the plaintiff need not plead exhaustion in the complaint and a defendant may only assert the defense in a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), if it is clear from the face of the complaint that the plaintiff has failed to exhaust. Id. at 297.

In this case, it is evident from the documents that Plaintiff submitted to the Court with his original Complaint and the related documents submitted by Defendants with their respective Motions to Dismiss that Plaintiff has not only failed to exhaust his administrative remedies relative to his Eighth Amendment claims but that those claims are also procedurally defaulted.[4] As such, the issue, which has been raised by both the Medical Defendants and the DOC Defendants, is not only properly before the Court but is subject to dismissal under Fed. R. Civ. P. 12(b)(6).

        1.    **Plaintiff's Grievances**

Plaintiff filed two grievances relative to the medical care he received following his fall in the shower on November 21, 2011. The first grievance, which Plaintiff submitted with the original Complaint, was filed on November 23, 2011. See ECF No. 36-1, pp. 2-3. Plaintiff complains therein that as the result of the fall he injured his groin, hip and back which caused

---

[4] The DOC Defendants have submitted copies of the grievances Plaintiff filed and the documents relating to his subsequent appeals in conjunction with their Motion to Dismiss. Because those copies are more legible that the copies submitted by Plaintiff with his original Complaint, the Court will cite to the copies provided by the DOC Defendants.

him immediate discomfort, and that he woke up at 4:00 a.m. the next morning in excruciating pain and could not get out of bed.  Plaintiff contends that, despite calls to medical by Officer Moore explaining Plaintiff's inability to walk, medical told Moore that Plaintiff would be given a misconduct if he did not walk to medical for his mandatory medications and that if they had to come out in the rain to get him, Plaintiff would be charged $25.00.  Plaintiff claims he agreed to the fee but that medical still declined to come and get him, and that it wasn't until a sergeant on the next shift arranged for Plaintiff to have temporary use of a wheel chair that Plaintiff was able to get his medications and dinner.  Plaintiff also states in the grievance that when Officer Lazarro called medical on his behalf the next day, "Nurse Bobby" made a disparaging remark about Plaintiff and hung up.[5]  Plaintiff was able to get to medical for his medications that morning after Officer Lazarro obtained a wheelchair for him.  Plaintiff apparently then went to see Defendant Telega for "a non-related treatment" at which time he overheard "Nurse Mark" angrily ask if Hammond was there yet and remark that "Hammond don't need no damn wheelchair, he's getting crutches."[6]  Plaintiff complains that Grucza told Telega that Plaintiff didn't need a wheelchair and instructed Telega to give Plaintiff crutches instead.  Telega diagnosed Plaintiff with a groin, hip and back injury, and ordered crutches and a muscle relaxer.

      Plaintiff filed the second grievance on November 25, 2011.  That grievance, which Plaintiff also submitted with the original Complaint, largely revolves around the actions of "Nurse Bobby" relative to Plaintiff's injuries and subsequent care following his fall.  See id. at pp. 4-5. Specifically, Plaintiff contends in the grievance that on November 24, 2011, he was sent back to medical by the block sergeant and CO Lazarro because he was unable to walk with the crutches, at which time Plaintiff claims he encountered "an overly aggressive Nurse Bobby,"

---

[5] It appears undisputed that "Nurse Bobby" refers to Defendant Monroe.

[6] It also appears undisputed that "Nurse Mark" refers to Defendant Grucza.

who disregarded the pain he was in, told him there was nothing else she could do, and refused to give Plaintiff a wheelchair.  Plaintiff states that thereafter, on his way to lunch, he fell to the ground in agony and that Nurse Bobby, who accompanied him in the ambulance on the way to the infirmary, made light of his condition, expressed disbelief in his injury, and generally berated him the entire trip.  Plaintiff also contends that, upon arriving at the infirmary, Nurse Bobby grabbed him by both of his feet and swung them over the side of the stretcher because Plaintiff was not extricating himself from the ambulance quickly enough, and caused Plaintiff to lose his balance.  Plaintiff also complains that Nurse Bobby treated him in a disrespectful manner and is unqualified to deal with emergency situations.  In addition, Plaintiff generally complains in the grievance that the medical staff is hostile toward him and that his interactions with the staff are "adversarial" and "at times contentious," as illustrated by the events that transpired the day before when he was seen by Defendant Telega.

Because these two grievances concerned largely the same subject matter they were combined into a single grievance, Grievance No. 391257, requiring only one response.  See id. at p. 2.

At the first step of the DOC inmate grievance process, the Initial Review Response, which Plaintiff also submitted to the Court with the original Complaint, was issued on December 13, 2011, by Plaintiff's Unit Manager.  See id. at p. 6.  The Unit Manager noted that the health care staff denied making any threats to Plaintiff regarding a misconduct or charging him a fee if they had to pick him up, and that Defendant Grucza denied having discussed Plaintiff's need for a wheelchair with Defendant Telega.  In addition, the Unit Manager stated that:

> When [Plaintiff] was seen by Nurse Monroe she did provide treatment.  [Plaintiff] [was] given ice packs, crutches and pain medication.  Nurse Monroe advised [Plaintiff] that at that time there was nothing more she could do for [Plaintiff].  [Plaintiff] [has] been seen several times by the

12

>Medical Department. Most recently, [Plaintiff] had an x-ray on 12/06/11 which revealed no fracture. [Plaintiff] [is] currently receiving warm soak to [his] right hip and [has] a follow up appointment scheduled for this week.

Id. Accordingly, the grievance was denied.

### 2.     Procedural Default

Plaintiff then proceeded to the second step of the DOC grievance process. He filed an appeal, which was three pages in length, to the Facility Manager on December 15, 2011. Id. at pp. 8-10. The appeal, which Plaintiff attached to the original Complaint along with the Facility Manager's response, was subsequently dismissed and returned to Plaintiff because it exceeded the two page limit provided for in DC-ADM 804. See id. at p. 11. Despite being notified of the error and given the opportunity to correct the error, Plaintiff nevertheless resubmitted the same three page appeal to the Facility Manager on January 24, 2012, and, thus, was still not in compliance with DC-ADM 804. Id. at pp. 8-10, 11. Thus, the Facility Manager consequently dismissed the appeal a second time. Id. at p. 11.

Plaintiff appealed to the Secretary's Office of Inmate Grievances and Appeals on February 27, 2012. Id. at p. 12. Because Plaintiff's second step appeal to the Facility Manager exceeded two pages, the Secretary's office dismissed Plaintiff's grievance at the final appeal level for failing to comply with submission procedures. Id. at p. 13.[7]

---

[7] The Court notes here that the second appeal submitted to the Facility Manager on January 24, 2012, and the remainder of the appeal documents relative to Plaintiff's grievances were not submitted by Plaintiff with his original Complaint, but rather have been submitted by Defendants in conjunction with their respective Motions to Dismiss. Under the circumstances of this case, the Court has nevertheless considered them without converting the pending Motions to motions for summary judgment as it is clear that Plaintiff not only had notice of the contents of these documents and an opportunity to refute them, but that Plaintiff himself has relied on their content. See In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426 ("the primary problem raised by looking to documents outside the complaint -- lack of notice to the plaintiff -- is dissipated where plaintiff has actual notice and has relied upon these documents . . . "); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d at 1196-97 ("[t]he reason that a court must convert a motion to dismiss to a summary judgment motion if it considers extraneous evidence submitted by the defense is to afford the plaintiff an opportunity to respond. . . . When a complaint relies on a document, however, the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished"). As previously discussed, the record shows that Plaintiff submitted the original Complaint to this Court on January 13, 2012, to which he attached his two grievances, the Initial Review

It is therefore apparent from the record that Plaintiff's appeal was defective and that he did not "properly" exhaust his administrative remedies.[8]

Plaintiff's argument to the contrary is not only unpersuasive but is belied by the very documents he has submitted to the Court. Specifically, Plaintiff points to the fact that his initial grievances were each two pages in length and in compliance with DOC policy. Plaintiff contends that when Defendant Adams elected to combine the two grievances into one grievance, it exceed the two page limit and that the "accumulative nature of the grievance which caused it to be dismissed on the final appeal." ECF No. 44, pp. 1-2.

As previously discussed, however, it was not the grievances themselves, either individually or combined, that failed to comply with DOC Policy; rather it was the three page *appeal* that Plaintiff subsequently submitted to the Facility Manager that ran afoul of the two page limit. See ECF No. 36-1, pp. 8-10. Moreover, instead of correcting the error after being

---

Response, the Appeal to the Facility Manager and the Facility Manager's rejection of the appeal because Plaintiff failed to comply with the page limitation. ECF Nos. 1, 6. On May 16, 2012, the DOC Defendants moved to dismiss the original Complaint arguing, much as they have here, that Plaintiff failed to exhaust his administrative remedies and attached thereto the remaining documents relative to Plaintiff's grievances -- documents which had not yet been generated when Plaintiff filed the original Complaint. ECF No. 14-2. Plaintiff therefore had all of the documents relevant to his grievances and subsequent appeals in his possession and was aware of their content as of May, 2012. After Plaintiff filed the Consolidated Amended Complaint on January 10, 2013, the DOC Defendants and the Medical Defendants filed the instant Motions, on January 17, 2013 and January 18, 2013, respectively, again arguing that Plaintiff has failed exhaust his administrative remedies and resubmitting the documents relevant to the appeals of Plaintiff's grievances that had been made part of the record eight months earlier. ECF Nos. 34-1, 36-1. Plaintiff does not dispute the authenticity of these documents or otherwise refute their content. To the contrary, Plaintiff himself has relied on them in responding to the Defendants' instant Motions. Specifically, Plaintiff quotes from the Secretary's response at the final appeal level stating that "Your grievance is being dismissed at the final appeal level for the reason outlined below. Grievance or appeal exceeded two pages (was too lengthy)." ECF No. 44, p. 2. See ECF No. 36-1, p. 13. Although Plaintiff takes issue with the basis for the Secretary's finding, he nevertheless acknowledges that the Secretary dismissed his appeal at the final level for failing to comply with the page limitation. Under these circumstances, the concern associated with considering documents outside the complaint when deciding a Motion to Dismiss does not exist and the Court declines to convert the instant motions into ones for summary judgment. See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d at 1196-97. See also Brown v. Daniels, 128 F. App'x 910, 913 (3d Cir. 2005) ("the District Court's consideration of the documents was not unfair to the Browns because, by themselves relying upon the documents, the Browns were on notice that they would be considered").

[8] It should also be noted here that, in addition to Plaintiff's appeal exceeding the two page limit, neither Defendant PHS nor Defendants Overton or Adams were specifically named or otherwise mentioned in Plaintiff's grievances rendering them defective on that basis as well. See ECF No. 36-1, pp. 2-5.

apprised of the infraction, Plaintiff submitted the same defective three page appeal a second time. It was these errors that caused his grievance to be dismissed at both the second and final level of review and not the fact that his grievances were combined for review.  As such, Plaintiff's claims are procedurally defaulted and properly dismissed.  Accordingly, the Court does not reach the merits of Plaintiff's claims.

## IV.    CONCLUSION

For the foregoing reasons, the Motion to Dismiss Plaintiff's Consolidated Amended Complaint submitted on behalf of the Medical Defendants, and the Motion to Dismiss the Consolidated Amended Complaint submitted on behalf of the DOC Defendants are properly granted.[9]

Accordingly, the following Order is entered:

AND NOW, this 17th day of July, 2013, upon consideration of the Motion to Dismiss Plaintiff's Consolidated Amended Complaint submitted on behalf of Defendants Telega and PHS, ECF No. 33, and the Motion to Dismiss the Consolidated Amended Complaint submitted on behalf of Defendants SCI Albion/DOC, Grucza, Monroe, Overton, and Adams, ECF No. 35, and Plaintiff's Response to the Motions to Dismiss, ECF No. 44,

IT IS HEREBY ORDERED that the Motions are granted.  IT IS FURTHER ORDERED that the case is dismissed for failure to state a claim and the Clerk is to mark the case closed.  IT IS FINALLY ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate

---

[9] Although the United States Court of Appeals for the Third Circuit has held that when dismissing a civil rights case for failure to state a claim, a court must give the plaintiff an opportunity to amend the complaint whether or not the plaintiff has asked to do so, the Court is not required to allow an amended complaint to be filed where it would be inequitable or futile.  See Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007), citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).  Here, Plaintiff has not only amended his complaint once but the exhibits provided to the Court preclude a finding that Plaintiff has exhausted his administrative remedies.  His claims therefore are not properly before the Court and allowing Plaintiff to file another amended complaint would be futile.  As such, the Court declines to do so.

Procedure, if the Plaintiff wishes to appeal from this Order he must do so within thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P., with the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.

>BY THE COURT:
>
>/s/ Maureen P. Kelly
>MAUREEN P. KELLY
>UNITED STATES MAGISTRATE JUDGE

cc:   Gregory Hammond
    JL-5438
    SCI Albion
    10745 Route 18
    Albion, PA 16475

    All Counsel of Record Via CM-ECF